1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10
11
12   MICHAEL CORRAL,                  ) 1:10-cv—01341-SKO-HC
                                      )
13              Petitioner,           ) ORDER GRANTING RESPONDENT'S
                                      ) MOTION TO DISMISS THE PETITION
14       v.                           ) (DOCS. 11, 1, 6)
                                      )
15                                    ) ORDER DENYING PETITIONER'S MOTION
     JAMES YATES, Warden,             ) FOR AN EVIDENTIARY HEARING (DOCS.
16                                    ) 21, 26)
                Respondent.           )
17   _____) ORDER DISMISSING THE PETITION AND
                                        DIRECTING THE ENTRY OF JUDGMENT
18                                      FOR RESPONDENT

19                                      ORDER DECLINING TO ISSUE A
                                        CERTIFICATE OF APPEALABILITY
20

21       Petitioner is a state prisoner proceeding pro se with a

22   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

23   Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

24   the jurisdiction of the United States Magistrate Judge to conduct

25   all further proceedings in the case, including the entry of final

26   judgment, by manifesting their consent in writings signed by the

27   parties or their representatives and filed by Petitioner on

28   August 2, 2010, and on behalf of Respondent on December 27, 2010.

                                 1

Pending before the Court is Respondent's motion to dismiss the petition, which was filed on February 4, 2011.  On February 22, 2011, Petitioner filed an opposition styled as an objection to the motion, and Respondent filed a reply on April 19, 2011. Pursuant to the Court's order, Petitioner filed a sur-reply and declaration on July 11, 2011.  Respondent filed a reply to the sur-reply on August 29, 2011.

I.   <u>Proceeding by a Motion to Dismiss</u>

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same). Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4

standards to review a motion to dismiss filed before a formal

answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

Here, Respondent's motion to dismiss addresses the untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1). The material facts pertinent to the motion are mainly contained in copies of the official records of state judicial proceedings which have been provided by Respondent and Petitioner, and as to which there is no factual dispute.  The parties have submitted declarations concerning matters pertinent to equitable tolling. Because Respondent has not filed a formal answer, and because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.   Background

Petitioner alleges that he is a resident of the Pleasant Valley State Prison (PVSP) serving a sentence of sixteen (16) years and four (4) months imposed by the Fresno County Superior Court in December 2006 upon Petitioner's conviction of car jacking and second degree robbery.  (Pet. 1.)  Petitioner challenges his sentence, contending that the aggravated term was unauthorized absent jury findings made upon proof beyond a reasonable doubt.  (Pet. 4-5.)  He also challenges state court decisions upholding the sentence.  (Id. at 6.)

Documents lodged by Respondent in support of the motion to dismiss reflect that Petitioner entered a guilty plea to one count of car jacking in violation of Cal. Pen. Code § 215(a) and one count of second degree robbery in violation of Cal. Pen. Code

§ 211.  Petitioner admitted that as to each offense, he was armed with a deadly or dangerous weapon within the meaning of Cal. Pen. Code § 12022(b)(1).  He further admitted special allegations of a prior prison term, prior serious felony conviction, and prior "strike" conviction in violation of Cal. Pen. Code §§ 667.5(b), 667(a), 667(b)-(i), and 1170.12(a)-(d).

Petitioner was initially granted probation.  When Petitioner failed to meet the conditions of probation, the trial court ordered that a previously stayed term be executed on December 18, 2006.  (LD 1, 2.)[1]  The strike allegation was dismissed, and for the car jacking, Petitioner was sentenced to serve an upper term of nine years, one year for the weapon enhancement, and an additional five-year term for the prior serious felony conviction.  A consecutive one-year term for the robbery and four months for the weapon enhancement were also imposed.  (Id.)

Petitioner appealed the sentence, and on November 6, 2007, the Court of Appeal of the State of California, Fifth Appellate District (DCA) modified the judgment to stay the term imposed for the robbery, and affirmed the judgment as modified.  (LD 2.)

On December 13, 2007, Petitioner petitioned for review in the California Supreme Court which was summarily denied on January 16, 2008.  (LD 3-4.)

On March 15, 2007, Petitioner filed a petition for writ of habeas corpus in the trial court.  (LD 5.)  The court denied the petition on May 1, 2007, in an order noting a lack of documentation as well as the pendency of Petitioner's appeal in

---

[1] "LD" refers to lodged documents submitted by Respondent in support of the motion to dismiss.

the DCA.  The trial court stated that because of the appeal, the DCA had jurisdiction, and the trial court lacked jurisdiction. (LD 6, 1-2.)

On December 19, 2007, Petitioner filed another petition for writ of habeas corpus in the trial court.  (LD 7.)  On January 14, 2008, the court denied the petition.  The court determined that it lacked jurisdiction to grant the requested relief because the petition for review that had been filed by Petitioner in the Supreme Court in December 2007 was still pending, and no remittitur had issued.  (LD 8.)

On April 6, 2008, Petitioner filed a third petition for writ of habeas corpus in the Fresno County Superior Court, which was denied on April 25, 2008.  (LD 9, 10.)

On June 8, 2008, Petitioner filed a petition for writ of habeas corpus in the DCA, which was summarily denied on December 4, 2008.  (LD 11, 12.)

On March 29, 2009, Petitioner filed another petition for writ of habeas corpus in the DCA, which was summarily denied on April 17, 2009.  (LD 13, 14.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on May 8, 2009, which was summarily denied on September 30, 2009.  (LD 15, 16.)

The petition in the instant case was filed on July 26, 2010. (Pet. 1.)[2]

---

[2] Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988).  The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).

III.   <u>Statute of Limitations</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA applies to all petitions for writ of habeas corpus filed after the enactment of the AEDPA.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), <u>cert.</u> <u>denied</u>, 118 S.Ct. 586 (1997).  Thus, the AEDPA applies to the instant petition, which was filed in July 2010.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate

---

Petitioner did not sign and date the petition he initially filed in this Court. (Pet., doc. 1, 8.)  On July 28, 2010, he submitted a supplemental document stating that he was sending page 7 of the writ petition that was filed on July 26, 2010, because he forgot to date and sign the document. (Doc. 6, 1.)  He signed the petition as of July 28, 2010. (<u>Id.</u> at 2.)  His request that the supplemental document be filed with his petition was granted. (Doc. 7, filed December 7, 2010.)  Neither the electronic nor the paper record contains the envelope within which the petition was mailed. Thus, application of the mailbox rule is not possible based on the documentation before the Court.

of the claim or claims presented could have been
discovered through the exercise of due diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Generally the statute of limitations is an affirmative
defense, and the party claiming the defense bears the burden of
proof unless the limitations statute is considered to be
jurisdictional. <u>Kingman Reef Atoll Investments, L.L.C. v. U.S.</u>,
541 F.3d 1189, 1197 (9th Cir. 2008); <u>Payan v. Aramark Management
Services Ltd. Partnership</u>, 495 F.3d 1119, 1122 (9th Cir. 2007).
The one-year statute of limitations applicable to petitions for
federal habeas corpus relief by state prisoners is not
jurisdictional and does not set forth an inflexible rule
requiring dismissal whenever the one-year clock has run.  <u>Holland
v. Florida</u>, --U.S.–, 130 S.Ct. 2549, 2560 (2010).  Thus, under
the AEDPA, the respondent bears the burden of proving that the
AEDPA limitations period has expired. <u>Ratliff v. Hedgepeth</u>, 712
F.Supp.2d 1038, 1050 (C.D.Cal. 1020) (collecting authorities).

A.   <u>Commencement of the Limitation Period</u>

Respondent argues that the one-year limitation period of
§ 2244(d) began to run on the date specified in § 2244(d)(1)(A),
namely, the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review.

However, Petitioner contends that difficulties he
encountered in gaining access to the prison law library

7

1    constituted an impediment to filing an application that was

2    created by state action and prevented his filing a petition for

3    habeas relief.  Thus, Petitioner argues that pursuant to

4    § 2244(d)(1)(B), the limitations period did not begin to run

5    until the date on which the impediment was removed.  (Opp., doc.

6    13, 6-7.)

7                   1.   Removal of State-Created Impediment

8         If an applicant was prevented from filing a federal habeas

9    petition by an impediment created by state action in violation of

10   the Constitution or laws of the United States, then the

11   limitations period will commence running from the date on which

12   the impediment to filing is removed.  28 U.S.C. § 2244(d)(1)(B).

13   A circumstance or occurrence argued to have prevented an inmate

14   from filing a federal habeas petition pursuant to § 2244(d)(1)(B)

15   must violate the Constitution or laws of the United States.

16   § 2244(d)(1)(B); Shannon v. Newland, 410 F.3d 1083, 1088 n.4 (9th

17   Cir. 2005).  Further, the petitioner must establish that the

18   alleged impediment actually caused the inmate to be unable to

19   file a timely petition.  Bryant v. Schriro, 499 F.3d 1056, 1060-

20   61 (9th Cir. 2007).

21        Here, Petitioner alleges that the conditions at the law

22   library at PVSP are not yet in compliance with the federal

23   consent decree in Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.

24   1970).  (Reply, doc. 13, 5.)

25        The Court takes judicial notice of the docket and document

26   number 321 filed on April 20, 2010, in Gilmore v. Lynch, case

27   number 3:66-cv-45878-SI, a case before the United States District

28   Court for the Northern District of California, in which the court

                                    8

consolidated numerous suits of inmates and issued an injunction requiring California to maintain a specified list of legal literature in all its prisons to help inmates gain access to the courts.[3]  In 1972, the court approved regulations proposed by the state correctional department offering a more comprehensive list of materials, and it ordered their adoption.  Gilmore v. People, 220 F.3d 987, 992-95 (9th Cir. 987).  After the Gilmore case was dismissed by the district court with prejudice in 1980, the court retained jurisdiction over the 1972 injunction until it granted the defendants' motion to terminate the injunction and the court's jurisdiction on April 20, 2010.  (Doc. 321, 1-2.)  Thus, the Gilmore case is no longer pending.

It is now established that there is no abstract, freestanding constitutional right to have access to a law library or legal assistance, or even to file a timely § 2254 petition; rather, there is a right of meaningful access to the courts. Lewis v. Casey, 518 U.S. 343, 350-51 (1996); Ramirez v. Yates, 571 F.3d 993, 1000-1001 (9th Cir. 2009).  The decision in Gilmore to issue an injunction occurred well in advance of the 1996 decision in Lewis v. Casey, 518 U.S. 343, which established that the right of access to the courts may be satisfied not only by law libraries, but also by other methods of providing meaningful access, and that a deficient prison law library or legal assistance program is not in itself actionable.  Lewis v. Casey, 518 U.S. at 350-51.

---

[3] The Court may take judicial notice of court records.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

The Court concludes that the fact that a prison law library might not meet the standards of the injunction in the <u>Gilmore</u> case does not by itself establish an unconstitutional denial of access to the courts.

Petitioner alleges generally that prison authorities at PVSP have denied library privileges to prisoners with pending habeas deadlines, and the library contains inadequate materials and computer terminals to accommodate the overcrowded conditions of the prison. All the law books have been removed from the library, and there are five (5) computers with different books in them that are updated every three (3) months. Further, budget limitations have necessitated reducing staff and instituting rolling lock-downs that further limit or preclude library access for weeks at a time. (Doc. 13, 5-6.) The lock-downs shut an unspecified program down for one watch every other day, and the policy on the down days is to call in only inmates who are priority law library users (PLU) with a verified legal deadline within thirty days. (<u>Id.</u> at 6.) Petitioner alleges that his educational programming reduced his library time because he was not permitted to leave his work/education station to use the library. (<u>Id.</u> at 5.)

Petitioner specifically alleges that the prison was locked down from August 15, 2010, to September 8, 2010, and that there were other, shorter lock-downs. He alleges that the totality of the problems and policies concerning the law library have impeded him from being able to file his pleadings any sooner because he needed access to legal research materials and help to understand them. (<u>Id.</u> at 6.)

The record contains the declaration of R. Kevorkian, who for sixteen years has been a librarian at PVSP. (Doc. 20-1, 1.) The librarian states that he or she not only manages the library's collections and acquisitions in accordance with state regulations and operational procedures, but also supervises work and monitors prisoners' access to the library. The law library hours are typically 9:30 a.m. through 3:45 p.m., Monday through Friday. During institutional restrictions such as lock-downs, inmates may use the library by establishing urgency of need and obtaining preferred-legal-user (PLU) access or by being served at their cells with photocopied legal research materials, such as case law or statutes, prepared upon request. A pre-existing scheduling conflict, such as a work assignment, may be overridden by establishing urgency of need and using the "ducat" or inmate pass system, whereby once the assignment office issues a ducat, an inmate may be called to the law library during his assigned work hours. Inmates with court-ordered deadlines within thirty (30) days are given priority status pursuant to departmental and prison operations manuals. (Id. at 1.)

In March and April 2011, Kevorkian also checked various logs, which are described as accurate, including records of inmates designated as having PLU status, dates and times of inmates' access to the library, and inmates' requests for copies. The PLU log reflected that Petitioner's name was not listed and that he did not apply for PLU status from December 2008 to the present. The library in/out log reflected that between December 2008 and July 2010, Petitioner accessed the library five times: February 17, 2009, for about one-half hour; March 26, 2009, for

11

about an hour; March 9, 2010, for fifty minutes; July 13, 2010, for an hour; and July 21, 2010, for an hour and twenty minutes. (Id. at 1-2.)  The log of inmates' requests for copies from January 2009 through July 2010 reflected one instance in which Petitioner made 104 copies of a § 2254 petition on July 13, 2010. To the best of the librarian's knowledge, Petitioner was not denied access to the library from December 2008 to April 18, 2011, the date of the declaration.  (Id. at 2.)

In response, Petitioner declared that he sought priority library user status (PLU).  Whenever he requested PLU status, he was informed by Kevorkian that unless he had a court order or letter stating a deadline, no such status could be granted to Petitioner.  Further, the library was available to inmates in regular status less than half of the hours of 9:30 to 3:30 Monday through Friday; access depended upon housing assignment and frequent lock-downs.  He further alleged that Kevorkian was "deceptive."  (Doc. 26, 7.)

Petitioner submitted a declaration of inmate Charles Saenz that confirms the difficulty of obtaining access to the library except for one day a week because of lock-downs, the need for a thirty-day deadline, and yard time schedules.  (Id. at 8.) Saenz characterized library access as first come first served, and not guaranteed.  (Id.)  The declaration of inmate Douglas William Hysell, who is involved in numerous court cases, similarly confirms Petitioner's general assertions concerning access to the law library, available resources, and the PLU system.  (Id. at 9.)  Hysell further opines that a layman such as Petitioner, who lacked a thirty-day deadline, would be facing a state-created

12

1  impediment to researching and filing a cognizable petition. (Id.)

2  The declaration of inmate William Sutherland, who has four

3  ongoing cases and is required to do hours of research, confirms

4  the existence of PLU access but indicates that deadlines that are

5  set by rules (apparently as distinct from court order) are not a

6  basis to allow PLU status.  (Id. at 10.)

7  Petitioner's factual allegations concerning library access

8  and lock-downs are general in nature; he does not detail specific

9  attempts to gain access to the law library or to use any

10  alternative means of research.  The one period of lock-down

11  between August 15, 2010, and September 8, 2010, which Petitioner

12  specifically details, occurred after the petition was filed here.

13  In contrast, the declaration of the librarian demonstrates that

14  there were various methods to perform legal research despite

15  conflicting work assignments, educational programs, or lock-

16  downs.  Further, during the critical period between December 4,

17  2008, when the DCA denied Petitioner's first petition filed in

18  that court for habeas relief, and the filing of the instant

19  petition on July 26, 2010, records reflect that Petitioner did

20  not seek preferred user status, sought to use the library only

21  five times for approximately five hours, and only used copy

22  services once to copy a § 2254 petition.

23  In summary, Petitioner has not shown that he suffered a

24  denial of his right of access to the courts or that it resulted

25  in any obstruction of his ability to file a habeas petition.

26  As set forth above, in the context of § 2244(d)(1)(B),

27  there is no abstract, freestanding constitutional right to have

28  access to a law library or legal assistance, or even to file a

13

1  timely § 2254 petition.  Lewis v. Casey, 518 U.S. 343, 350-51

2  (1996); Ramirez v. Yates, 571 F.3d 993, 1000-1001.  Instead, it

3  is the right of meaningful access to the courts that warrants

4  protection.  To show that a circumstance prevented a petitioner

5  from filing a habeas petition within the meaning of §

6  2244(d)(1)(B), the petitioner must show that the circumstance

7  prevented him from presenting his claims in any form to any

8  court.  Id.  Where a petitioner establishes only generalized,

9  limited access to legal materials and copying service, and the

10 petitioner is able to file multiple petitions in state courts

11 during the pertinent time period, the petitioner has failed to

12 establish an impediment by unlawful or unconstitutional state

13 action that actually prevented the filing of a timely petition.

14 Id.

15      Here, as the procedural summary of Petitioner's state court

16 proceedings reflects, Petitioner was able during the pertinent

17 time to file numerous state court petitions.  The filing of

18 multiple petitions demonstrates that Petitioner did not suffer a

19 deprivation of his constitutional right to meaningful access to

20 the courts and thus was not prevented from filing a federal

21 habeas petition.  Ramirez v. Yates, 571 F.3d at 1000-1001.

22      In summary, Petitioner has not alleged facts showing that

23 there was unconstitutional state action or that any state action

24 resulted in an impediment that actually prevented Petitioner from

25 filing a timely habeas petition.  Accordingly, the Court rejects

26 Petitioner's argument that § 2244(d)(1)(B) applies.

27      The Court concludes that the portion of § 2244(d)(1) that

28 governs the commencement of the running of the limitations period

14

1  is § 2244(d)(1)(A), which provides that the limitation period
2  runs from the date on which the judgment became final by the
3  conclusion of direct review or the expiration of the time for
4  seeking such review.

5                    2.  Finality of the Judgment

6        Under § 2244(d)(1)(A), the "judgment" refers to the sentence
7  imposed on the petitioner.  Burton v. Stewart, 549 U.S. 147, 156-
8  57 (2007).  The last sentence was imposed on Petitioner on
9  December 18, 2006.

10       Under § 2244(d)(1)(A), a judgment becomes final either upon
11 the conclusion of direct review or the expiration of the time for
12 seeking such review in the highest court from which review could
13 be sought.  Wixom v. Washington, 264 F.3d 894, 897 (9th Cir.
14 2001).  The statute commences to run pursuant to § 2244(d)(1)(A)
15 upon either 1) the conclusion of all direct criminal appeals in
16 the state court system, followed by either the completion or
17 denial of certiorari proceedings before the United States Supreme
18 Court; or 2) if certiorari was not sought, by the conclusion of
19 all direct criminal appeals in the state court system and the
20 expiration of the time permitted for filing a petition for writ
21 of certiorari.  Wixom, 264 F.3d at 897 (quoting Smith v.
22 Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525
23 U.S. 1187 (1999)).  Neither party has indicated that Petitioner
24 sought certiorari from the United States Supreme Court.

25       Here, Petitioner's direct criminal appeals in the state
26 court system concluded when his petition for review was denied by
27 the California Supreme Court on January 16, 2008.  The time
28 permitted for seeking certiorari was ninety days.  Supreme Court

1  Rule 13; <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999).

2  The Court will apply Fed. R. Civ. P. 6(a) in calculating the

3  pertinent time periods.  <u>See</u>, <u>Waldrip v. Hall</u>, 548 F.3d 729, 735

4  n.2 (9th Cir. 2008), <u>cert.</u> <u>denied</u>, 130 S.Ct. 2415 (2010).

5  Applying Fed. R. Civ. P. 6(a)(1)(A), the day of the triggering

6  event is excluded from the calculation.  Thus, the ninety-day

7  period commenced on January 17, 2008, the day following the

8  California Supreme Court's denial of review.  Applying Fed. R.

9  Civ. P. 6(a)(1)(B), which requires counting every day, the

10  ninetieth day was April 15, 2008.  Thus, the judgment became

11  final within the meaning of § 2244(d)(1)(A) on April 15, 2008.

12  Therefore, the limitation period began to run on April 16,

13  2008, and concluded one year later on April 15, 2009.  Fed. R.

14  Civ. P. 6(a); <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1245-46 (9th

15  Cir. 2001) (holding analogously that the correct method for

16  computing the running of the one-year grace period after the

17  enactment of AEDPA is pursuant to Fed. R. Civ. P. 6(a), in which

18  the day upon which the triggering event occurs is not counted).

19  Because the petition in the instant case was not filed until

20  July 26, 2010, the petition appears on its face to have been

21  filed outside the one-year limitation period provided for by

22  § 2244(d)(1).

23  B.  <u>Statutory Tolling</u>

24  Title 28 U.S.C. § 2244(d)(2) states that the "time during

25  which a properly filed application for State post-conviction or

26  other collateral review with respect to the pertinent judgment or

27  claim is pending shall not be counted toward" the one-year

28  limitation period.  28 U.S.C. § 2244(d)(2).  Once a petitioner is

1  on notice that his habeas petition may be subject to dismissal
2  based on the statute of limitations, he has the burden of
3  demonstrating that the limitations period was sufficiently tolled
4  by providing the pertinent facts, such as dates of filing and
5  denial. Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009)
6  (citing Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002),
7  abrogation on other grounds recognized by Moreno v. Harrison, 245
8  Fed.Appx. 606 (9th Cir. 2007)).

9      An application for collateral review is "pending" in state
10  court "as long as the ordinary state collateral review process is
11  'in continuance'-i.e., 'until the completion of' that process."
12  Carey v. Saffold, 536 U.S. 214, 219-20 (2002). In California,
13  this generally means that the statute of limitations is tolled
14  from the time the first state habeas petition is filed until the
15  California Supreme Court rejects the petitioner's final
16  collateral challenge, as long as the petitioner did not
17  "unreasonably delay" in seeking review. Id. at 221-23; accord,
18  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). The statute
19  of limitations is not tolled from the time a final decision is
20  issued on direct state appeal and the time the first state
21  collateral challenge is filed because there is no case "pending"
22  during that interval. Id.

23      In Carey v. Saffold, 536 U.S. 214, the Court held that an
24  application is "pending" until it "has achieved final resolution
25  through the State's post-conviction procedures." Id. at 220. An
26  application does not achieve the requisite finality until a state
27  petitioner "completes a full round of collateral review." Id. at
28  219-20. Accordingly, in the absence of undue delay, an

1  application for post-conviction relief is pending during the

2  "intervals between a lower court decision and a filing of a new

3  petition in a higher court" and until the California Supreme

4  Court denies review.  Id. at 223; Biggs v. Duncan, 339 F.3d 1045,

5  1048 (9th Cir. 2003).

6      However, when one full round up the ladder of the state

7  court system is complete and the claims in question are

8  exhausted, a new application in a lower court begins a new round

9  of collateral review.  Biggs v. Duncan, 339 F.3d at 1048.  The

10  time between the completion of a first round of collateral review

11  and the beginning of a second round is not tolled.  Delhomme v.

12  Ramirez, 340 F.3d 817, 820 (9th Cir. 2003), abrogated on other

13  grounds by Evans v. Chavis, 546 U.S. 189 (2006).

14      The first two habeas petitions filed by Petitioner in the

15  trial court on March 15, 2007, and December 19, 2007, were filed

16  before the California Supreme Court's denial on January 16, 2008,

17  of Petitioner's petition for review of the DCA's decision

18  modifying and otherwise affirming the judgment on direct appeal.

19  Because the limitations period did not begin to run until even

20  later, after expiration of the time to seek certiorari from the

21  California Supreme Court's denial of review, Petitioner's first

22  two habeas petitions were filed and denied before the limitations

23  period commenced running.  A collateral action filed before the

24  commencement of the running of the statutory limitation period

25  has no tolling consequence.  Waldrip v. Hall, 548 F.3d 729, 735.

26  Thus, the first two habeas petitions filed in the trial court

27  could not, and did not, toll the running of the limitations

28  period.

The next petition for collateral review was Petitioner's third petition for writ of habeas corpus filed in the trial court on April 6, 2008.  The interval between the California Supreme Court's denial of the petition for review on January 16, 2008, and the filing of the third habeas petition on April 6, 2008, is not tolled because there was no case "pending" during that interval.  Nino v. Galaza, 183 F.3d at 1006.

Although the date of filing the petition in the Superior Court on April 6, 2008, preceded the commencement of the running of the limitation period on April 16, 2008, the petition remained pending and was not denied until April 25, 2008.  Thus, the petition was pending between April 16, 2008, and April 25, 2008, during the running of the limitation period.  Therefore, this third petition in the trial court tolled the statute for ten (10) days.

Petitioner next filed a petition for writ of habeas corpus in the DCA on June 8, 2008.  The reasonably short time period between the trial court's denial of the habeas petition on April 25, 2008, and the filing of the DCA petition on June 8, 2008, is tolled because Petitioner was proceeding to complete one full round of collateral review without unreasonable delay.  Carey v. Saffold, 536 U.S. at 219-20.  Likewise, the period of the pendency of the DCA petition from June 8, 2008, until the DCA's denial on December 4, 2008, was tolled.  Thus, the limitation period was tolled from April 16, 2008, when the limitation period commenced to run during the pendency of the third trial court petition, until December 4, 2008, when the DCA denied the first petition, for a total of 233 days.

1  Respondent contends that there should be no "gap" or

2  "interval" tolling for the period between December 4, 2008, when

3  the DCA denied the first petition filed in the DCA, and March 29,

4  2009, when Petitioner filed another petition for habeas relief in

5  the DCA.  Respondent argues that the second DCA petition was

6  successive and thus did not constitute part of one continuous

7  round of collateral review.  Respondent also argues that

8  Petitioner unreasonably delayed in bringing the second DCA

9  petition.

10  Absent a clear direction or explanation from the California

11  Supreme Court about the meaning of the term "reasonable time" in

12  a specific factual context, or a clear indication that a filing

13  was timely or untimely, a federal court hearing a subsequent

14  federal habeas petition must examine all relevant circumstances

15  concerning the delay in each case and determine independently

16  whether the state courts would have considered any delay

17  reasonable so as to render the state petition "pending" within

18  the meaning of § 2244(d)(2).  Evans v. Chavis, 546 U.S. 189, 197-

19  98 (2006).

20  A delay of six months has been found to be unreasonable

21  because it is longer than the relatively short periods of thirty

22  (30) or sixty (60) days provided by most states for filing

23  appeals.  Evans v. Chavis, 546 U.S. at 201.  Shorter delays have

24  also been found to be unreasonable: one hundred forty-six (146)

25  days between the filing of two trial court petitions, Banjo v.

26  Ayers, 614 F.3d 964, 968-69 (9th Cir. 2010), cert. den., 131

27  S.Ct. 3023 (2011); intervals of eighty-one (81) and ninety-two

28  (92) days between the disposition of a writ at one level and the

20

filing of the next writ at a higher level, <u>Velasquez v. Kirdland</u>, 639 F.3d 964, 968 (9th Cir. 2011); one hundred fifteen (115) and one hundred one (101) days between denial of one petition and the filing of a subsequent petition, <u>Chaffer v. Prosper</u>, 592 F.3d. 1046, 1048 (9th Cir. 2010); and unexplained, unjustified periods of ninety-seven (97) and seventy-one (71) days, <u>Culver v. Director of Corrections</u>, 450 F.Supp.2d 1135, 1140 (C.D.Cal. 2006).

Here, the DCA summarily denied both petitions; thus, the DCA did not expressly determine that any petition was untimely. Petitioner filed the second petition one hundred fifteen (115) days after denial of the previous petition. The delay far exceeds the customarily short periods of delay considered reasonable.

Petitioner seeks to distinguish cases that characterize as unreasonable delays in filing that are longer than thirty or sixty days after a disposition of a previous application. Petitioner argues that his own unreasonable delay occurred, if at all, only once, between December 4, 2008, and March 29, 2009. Petitioner contends that a single delay is not sufficient; rather, repetitive delays are required, and his overall progress through exhaustion of state court remedies was not characterized by unreasonable delay.

However, reference to the pertinent statute shows that statutory tolling is permitted for the time "during which a properly filed application" for state post-conviction or other collateral review with respect to the pertinent judgment or claim "is pending...." 28 U.S.C. § 2244(d)(2). The statutory scheme

1  is expressly focused on the pendency of each singular

2  application.   Likewise, case authority reveals that the courts

3  are concerned with the pendency and timeliness of each

4  application for review.  See, e.g., Carey v. Saffold, 536 U.S. at

5  216-23; Evans v. Chavis, 546 U.S. at 191-201.

6        Petitioner argues that he was not filing successive

7  petitions, but rather was simply exhausting a claim concerning

8  the allegedly ineffective assistance of counsel.  (Doc. 13, 1:20-

9  24.)  Petitioner declares that he mistakenly thought that he

10  needed something more than a "postage stamp denial of his

11  petition before proceeding to the next level," and he thus re-

12  filed a second time in the DCA.  (Id. at 3:3-5.)  He admits that

13  the duplicate petitions in the DCA "might have been unnecessary,"

14  but he disagrees that the petitions were successive because they

15  concerned the same grounds and were not a return to the lower

16  courts for another round of habeas.  (Id. at 3.)  He also

17  contends that the second DCA petition was an amendment to his

18  first petition to add a claim based on a recent decision of the

19  United States Supreme Court, In re Cunningham, of which he had

20  become aware.  (Doc. 26, 2:6-14.)

21        To benefit from statutory tolling, a petitioner must

22  adequately justify a substantial delay.  28 U.S.C. § 2244(d)(2);

23  Evans v. Chavis, 546 U.S. at 192-93; Waldrip v. Hall, 548 F.3d

24  729, 734.  Under California law, a habeas "claim or sub-claim

25  that is substantially delayed will nevertheless be considered on

26  the merits if the petitioner can demonstrate 'good cause' for the

27  delay."  In re Robbins, 18 Cal.4th 770, 805 (1998) (citing In re

28  Clark, 5 Cal.4th 750, 783 (1993)).  Petitioner must show

particular circumstances, based on allegations of specific facts,
sufficient to justify the delay; allegations made in general
terms are insufficient.  In re Robbins, 18 Cal.4th at 787-88, 805
(citing In re Walker, 10 Cal.3d 764, 774 (1974)).  The delay is
measured from the time the petitioner or counsel knew, or
reasonably should have known, of the factual information offered
in support of the claim and the legal basis for the claim.  In re
Robbins, 18 Cal.4th at 787.

Here, Petitioner argues that viewing the totality of his
pursuit of one full, single round of state habeas review, results
in the conclusion that Petitioner was generally diligent.
Further, Petitioner was a lay person and was "somewhat confused"
about the proper way to proceed.  When on December 4, 2008, he
received the denial of his first DCA petition, he filed another
petition based on a mistaken, perceived need to obtain more than
a summary denial of his petition.  (Opp., doc. 13, 3:2, 2-3.)

With respect to Petitioner's reliance on his pro se status,
one generally does not have a constitutional right to counsel in
non-capital, state post-conviction proceedings or in the course
of discretionary direct review.  Pennsylvania v. Finley, 481 U.S.
551, 555-57 (1987); Ross v. Moffitt, 417 U.S. 600, 610-11 (1974).
Therefore, there is no constitutional right to counsel in non-
capital, federal habeas proceedings.  Bonin v. Vasquez, 999 F.2d
425, 429 (9th Cir. 1993).  Pro se status is not in itself
justification for late filing.  In re Clark, 5 Cal.4th 750, 765
(1993).

Petitioner's allegations concerning access to library
facilities, lack of legal and procedural knowledge, and limited

23

1   access to the prison law library are not sufficient to justify a

2   substantial delay where the petitioner was not wholly prevented

3   by lock-downs or prison employment from using the law library.

4   Evans v. Chavis, 546 U.S. at 201.

5       Petitioner's allegations concerning lock-downs,

6   overcrowding, and conflicts with Petitioner's educational

7   programming in prison are general in nature and do not

8   demonstrate that for the entire, extended period of delay between

9   December 4, 2008, and March 29, 2009, Petitioner was prevented

10  from filing a petition.  The specific information given by

11  Petitioner concerning lock-downs relates to the period from

12  August 15, 2010, through September 8, 2010; otherwise, he refers

13  only to other, shorter lock-downs.  The more specific allegations

14  of the law librarian establish that there were methods of access

15  (PLU access or use of the ducat system) which Petitioner did not

16  use, and that Petitioner did have access to the library and to a

17  copy service.  In short, Petitioner has not alleged specific

18  facts showing good cause for his long delay in filing the second

19  DCA petition.

20      With respect to the argument that the second petition was

21  not really successive, the Court takes judicial notice of the

22  docket of the DCA in the first habeas proceeding filed there,

23  case number F055452.[4]  The docket reflects that no order to show

24

25      [4] The Court may take judicial notice of facts that are capable of
    accurate and ready determination by resort to sources whose accuracy cannot
26  reasonably be questioned, including undisputed information posted on official
    web sites.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331,
27  333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d
    992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the
28  docket sheet of a California court.  White v Martel, 601 F.3d 882, 885 (9th
    Cir. 2010), cert. denied, 131 S.Ct. 332 (2010).  The official website of the

1    cause issued in that proceeding.  Pursuant to Cal. Rules of

2    Court, Rule 8.387, the denial order filed on December 4, 2008,

3    was thus final on the day it was issued.[5]  Therefore, the DCA's

4    first denial was final prior to the filing of the second petition

5    almost four months later.

6        With respect whether or not the second petition was

7    successive, Ninth Circuit authority establishes that if a

8    petitioner is attempting to correct deficiencies of a prior

9    petition, the prisoner is appropriately using state court

10   procedures, and habeas review is still pending.  To determine

11   whether tolling is appropriate, a court considers whether the

12   subsequent petition is limited to an elaboration of the facts

13   relating to the claims in the first petition.  If not, the

14   subsequent petition begins a new round of review, and the gap is

15   not tolled.  Banjo v. Ayers, 614 F.3d at 968-69;  Hemmerle v.

16   Schriro, 495 F.3d 1069, 1075 (9th Cir. 2007).  However, if the

17   subsequent petition simply attempts to correct the deficiencies

18   in the prior petition, it is construed as part of the previous

19   full round of collateral review.  Banjo v. Ayers, 614 F.3d at

20   969.  If such a subsequent petition is denied on the merits, it

21   will toll the statute during the interval that preceded its

22   filing.  Id.  If such a subsequent petition was not timely filed

23   pursuant to state law, then the period between the petitions is

24

25   California state courts is http://www.courts.ca.gov/courts.htm.
         [5] Rule 8.387 was formerly Rule 8.386, which was adopted effective January
26   1, 2008, and was renumbered as Rule 8.387 and amended, in respects not
     pertinent to the present case, effective January 1, 2009.  Pursuant to Cal.
27   Rules of Court, Rule 8.387(b)(1), a decision of the Court of Appeal in a
     habeas corpus proceeding is generally final in that court thirty (30) days
     after filing.  However, the denial of a petition for writ of habeas corpus
28   without issuance of an order to show cause is final in the Court of Appeal
     upon filing.  Rule 8.387(b)(2)(A).

not tolled.  Id.

Here, in the first DCA petition, Petitioner raised the
following claims:  1) the trial court imposed an unauthorized
sentence; 2) the imposition of an unauthorized sentence was in
breach of the plea agreement and provided grounds for Petitioner
to withdraw his plea; 3) the trial court wrongly denied
Petitioner's motion to substitute appointed counsel; and 4)
Petitioner's counsel in the trial court rendered ineffective
assistance by failing to communicate with Petitioner,
representing that Petitioner's case was a loser, and failing to
object to or challenge the unauthorized sentence and to correct
an error of 1,144 days of time credit at sentencing.  (LD 11.)

In the second petition filed in the DCA, Petitioner argued
that his plea agreement had been breached because his sentence
was unconstitutional as it was based on findings made by a
preponderance of evidence by the sentencing court instead of
beyond a reasonable doubt by a jury pursuant to Apprendi v. New
Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296
(2004); United States v. Booker, 543 U.S. 220; Ring v. Arizona,
536 U.S. 584 (2002), and Cunningham v. California, 549 U.S. 270
(2007).  (LD 13, 3-4.)  He alleged that his counsel had
maliciously conspired with the prosecutor to coerce and pressure
Petitioner to enter a plea by fear.

It thus appears that, as Petitioner has admitted, rather
than simply add facts to the petition to perfect an earlier
claim, Petitioner in fact raised a new, constitutional claim in
the second petition.  Further, he alleged different facts with
respect to the claim of alleged ineffective assistance of trial

26

1   counsel, which changed the basis of the claim from omissions to

2   affirmative, malicious conduct.  Accordingly, the second petition

3   does not appear to come within the exception, and it thus was a

4   successive petition.  Moreover, the cases relied on by Petitioner

5   in raising the new claim were not so recent as to justify the

6   delay in filing.

7        However, regardless of whether or not the second petition

8   was successive and subject to denial, the delay in filing the

9   second petition was unreasonable and unjustified.  Because

10  Petitioner did not justify the delay during the period following

11  the DCA's denial of his petition on December 4, 2008, until March

12  29, 2009, when he filed his second DCA petition, the interval is

13  not tolled.

14       In summary, the statute of limitations began running on

15  April 16, 2008, and was tolled until December 4, 2008.  One

16  hundred fourteen (114) days passed from December 5, 2008, through

17  March 28, 2009.  At that point, two hundred and fifty-one (251)

18  days of the limitations period remained.  The statute was tolled

19  from March 29, 2009, through September 30, 2009, when the

20  California Supreme Court denied the petition for writ of habeas

21  corpus.  The statute thus began to run again on October 1, 2009.

22  The statutory period expired two hundred and fifty-one days later

23  on June 8, 2010.  As Petitioner did not file the petition until

24  July 26, 2010, the petition was time-barred.

25            C.   Equitable Tolling

26       Petitioner argues that the running of the statute was

27  equitably tolled due to limited access to the law library based

28  on overcrowding, lock-downs, and conflicts with Petitioner's work

and education programs.  (Opp., doc. 13, 5.)  Petitioner also
alleges that as a high school drop-out, he was untrained in basic
education when he arrived at PVSP; he only recently passed the
state's GED program.  This hindered his skills in learning the
law and also reduced his access to the law library because he
could not leave his work station during the times he could
otherwise utilize the library.  (Id. at 5:22-28.)  He was never
granted access to the law library during numerous lock-downs at
PVSP.  (Doc. 26, 4:8-10.)  Petitioner declares that the law
librarian "failed to mention that at that very time he stated
Petitioner could access the law library, the facility was locked
down...."  (Id. at 4:26-28.)

Petitioner also states that the facts alleged by Respondent
and Respondent's witnesses are outside the record on appeal and
constitute grounds to grant an evidentiary hearing, appoint
counsel, and permit investigation and refutation of the
librarian's declaration.  (Id. at 5.)

The one-year limitation period of § 2244 is subject to
equitable tolling where the petitioner has been diligent, and
extraordinary circumstances, such as the egregious misconduct of
counsel, have prevented the petitioner from filing a timely
petition.  Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560
(2010).  The petitioner must show that the extraordinary
circumstances were the cause of his untimeliness and that the
extraordinary circumstances made it impossible to file a petition
on time.  Ramirez v. Yates, 571 F.3d 993, 997.  The diligence
required for equitable tolling is reasonable diligence, not
"maximum feasible diligence."  Holland v. Florida, 130 S.Ct. at

1   2565.

2       "[T]he threshold necessary to trigger equitable tolling

3   [under AEDPA] is very high, lest the exceptions swallow the

4   rule." <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (quoting <u>Miranda v.</u>

5   <u>Castro</u>, 292 F.3d 1063, 1066 (9th Cir. 2002)).

6       Petitioner bears the burden of alleging facts that would

7   give rise to tolling.  <u>Smith v. Duncan</u>, 297 F.3d 809 (9th Cir.

8   2002).

9       Here, Petitioner proceeded pro se.  Petitioner's pro se

10  status is not an extraordinary circumstance.  <u>Chaffer v. Prosper</u>,

11  592 F.3d 1046, 1049.  A pro se petitioner's confusion or

12  ignorance of the law does not, in itself, warrant equitable

13  tolling.  <u>Rasberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir.

14  2006).

15      Limited access to a law library and copy machine is a

16  routine restriction of prison life and thus is not an

17  extraordinary circumstance.  <u>Ramirez v. Yates</u>, 571 F.3d at 993.

18  Petitioner's allegations are general, and Petitioner has not

19  shown how any limitation of access to the law library actually

20  made it impossible for him to file a petition raising essentially

21  the same claims that he had raised before.  Thus, Petitioner's

22  showing differs materially from one that establishes that lack of

23  access to specific materials precluded timely filing.  Further,

24  Petitioner's filing numerous petitions in the state courts during

25  his incarceration is inconsistent with his allegations of

26  impossibility.  <u>Cf.</u>, <u>Ramirez v. Yates</u>, 571 F.3d at 998.

27      Accordingly, the Court concludes that Petitioner has not

28  shown that the statute should be equitably tolled.

29

1       IV.   Petitioner's Request for an Evidentiary Hearing

2           Petitioner requests an evidentiary hearing to investigate

3   and refute the allegations of the law librarian concerning

4   equitable tolling.

5           In considering a request for an evidentiary hearing, the

6   Court must first determine whether a factual basis exists in the

7   record to support the petitioner's claim.   Baja v. Ducharme, 187

8   F.3d 1075, 1078 (9th Cir. 1999).   The petitioner should state

9   with particularity facts, which if proven, would entitle him to

10  relief.   Earp v. Ornoski, 431 F.3d 1158, 1167 (9th Cir. 2005);

11  Baja v. Ducharme, 187 F.3d at 1079.

12          As the foregoing analysis reflects, Petitioner did not

13  allege or document specific facts that, if proven, would entitle

14  him to relief on the basis of equitable tolling.   Petitioner has

15  not demonstrated or suggested extraordinary circumstances beyond

16  his control.   He alleged only generalities that are contradicted

17  by specific facts reflected in a declaration based on

18  institutional records.

19          Petitioner was granted leave to file a sur-reply, and the

20  parties were given an ample opportunity to develop the pertinent

21  facts.   The matters as to which Petitioner should have submitted

22  specific facts pertained to events within his own knowledge, such

23  as his specific attempts to gain access to the law library and to

24  use other research sources, and the precise reasons why allegedly

25  limited access to research materials precluded timely filing.

26  Although Petitioner filed numerous petitions in the state courts

27  during the pertinent time and has had an opportunity to develop

28  the facts, he has not set forth specific facts that would

1  equitably toll the statute.  Accordingly, the Court will deny

2  Petitioner's request for an evidentiary hearing.

3      V.  <u>Certificate of Appealability</u>

4      Unless a circuit justice or judge issues a certificate of

5  appealability, an appeal may not be taken to the Court of Appeals

6  from the final order in a habeas proceeding in which the

7  detention complained of arises out of process issued by a state

8  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

9  U.S. 322, 336 (2003).  A certificate of appealability may issue

10 only if the applicant makes a substantial showing of the denial

11 of a constitutional right.  § 2253(c)(2).  Under this standard, a

12 petitioner must show that reasonable jurists could debate whether

13 the petition should have been resolved in a different manner or

14 that the issues presented were adequate to deserve encouragement

15 to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

16 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

17 certificate should issue if the Petitioner shows that jurists of

18 reason would find it debatable whether the petition states a

19 valid claim of the denial of a constitutional right and that

20 jurists of reason would find it debatable whether the district

21 court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,

22 529 U.S. 473, 483-84 (2000).

23      In determining this issue, a court conducts an overview of

24 the claims in the habeas petition, generally assesses their

25 merits, and determines whether the resolution was debatable among

26 jurists of reason or wrong.  <u>Id.</u>  It is necessary for an

27 applicant to show more than an absence of frivolity or the

28 existence of mere good faith; however, it is not necessary for an

31

1  applicant to show that the appeal will succeed.  Miller-El v.

2  Cockrell, 537 U.S. at 338.

3       A district court must issue or deny a certificate of

4  appealability when it enters a final order adverse to the

5  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

6       Here, it does not appear that reasonable jurists could

7  debate whether the petition should have been resolved in a

8  different manner.  Petitioner has not made a substantial showing

9  of the denial of a constitutional right.

10      Accordingly, the Court will decline to issue a certificate

11  of appealability.

12      VI.  Disposition

13      In summary, Respondent has established that the petition was

14  untimely and should be dismissed.

15      Accordingly, it is ORDERED that:

16      1)  Respondent's motion to dismiss the petition is GRANTED;

17  and

18      2)  Petitioner's motion for an evidentiary hearing

19  concerning the facts pertinent to equitable tolling is DENIED;

20  and

21      3)  The petition is DISMISSED as untimely filed; and

22      4)  The Clerk shall ENTER judgment for Respondent; and

23      5)  The Court DECLINES to issue a certificate of

24  appealability.

25  IT IS SO ORDERED.

26  **Dated:    September 6, 2011**            **/s/ Sheila K. Oberto**
                                             UNITED STATES MAGISTRATE JUDGE

27

28