1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CORRAL, | ) 1:10-cv—01341-SKO-HC |
| | ) |
| Petitioner, | ) ORDER GRANTING RESPONDENT'S |
| | ) MOTION TO DISMISS THE PETITION |
| v. | ) (DOCS. 11, 1, 6) |
| | ) |
| | ) ORDER DENYING PETITIONER'S MOTION |
| JAMES YATES, Warden, | ) FOR AN EVIDENTIARY HEARING (DOCS. |
| | ) 21, 26) |
| Respondent. | ) |
| | ) ORDER DISMISSING THE PETITION AND |
| | ) DIRECTING THE ENTRY OF JUDGMENT |
| | FOR RESPONDENT |

ORDER DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY

Petitioner is a state prisoner proceeding pro se with a
petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.
Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to
the jurisdiction of the United States Magistrate Judge to conduct
all further proceedings in the case, including the entry of final
judgment, by manifesting their consent in writings signed by the
parties or their representatives and filed by Petitioner on
August 2, 2010, and on behalf of Respondent on December 27, 2010.

1

Pending before the Court is Respondent's motion to dismiss the petition, which was filed on February 4, 2011.  On February 22, 2011, Petitioner filed an opposition styled as an objection to the motion, and Respondent filed a reply on April 19, 2011. Pursuant to the Court's order, Petitioner filed a sur-reply and declaration on July 11, 2011.  Respondent filed a reply to the sur-reply on August 29, 2011.

I.  <u>Proceeding by a Motion to Dismiss</u>

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same). Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4

standards to review a motion to dismiss filed before a formal

answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

Here, Respondent's motion to dismiss addresses the
untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).
The material facts pertinent to the motion are mainly contained
in copies of the official records of state judicial proceedings
which have been provided by Respondent and Petitioner, and as to
which there is no factual dispute.  The parties have submitted
declarations concerning matters pertinent to equitable tolling.
Because Respondent has not filed a formal answer, and because
Respondent's motion to dismiss is similar in procedural standing
to a motion to dismiss for failure to exhaust state remedies or
for state procedural default, the Court will review Respondent's
motion to dismiss pursuant to its authority under Rule 4.

II.  Background

Petitioner alleges that he is a resident of the Pleasant
Valley State Prison (PVSP) serving a sentence of sixteen (16)
years and four (4) months imposed by the Fresno County Superior
Court in December 2006 upon Petitioner's conviction of car
jacking and second degree robbery.  (Pet. 1.)  Petitioner
challenges his sentence, contending that the aggravated term was
unauthorized absent jury findings made upon proof beyond a
reasonable doubt.  (Pet. 4-5.)  He also challenges state court
decisions upholding the sentence.  (Id. at 6.)

Documents lodged by Respondent in support of the motion to
dismiss reflect that Petitioner entered a guilty plea to one
count of car jacking in violation of Cal. Pen. Code § 215(a) and
one count of second degree robbery in violation of Cal. Pen. Code

3

§ 211.  Petitioner admitted that as to each offense, he was armed with a deadly or dangerous weapon within the meaning of Cal. Pen. Code § 12022(b)(1).  He further admitted special allegations of a prior prison term, prior serious felony conviction, and prior "strike" conviction in violation of Cal. Pen. Code §§ 667.5(b), 667(a), 667(b)-(i), and 1170.12(a)-(d).

Petitioner was initially granted probation.  When Petitioner failed to meet the conditions of probation, the trial court ordered that a previously stayed term be executed on December 18, 2006.  (LD 1, 2.)[1]  The strike allegation was dismissed, and for the car jacking, Petitioner was sentenced to serve an upper term of nine years, one year for the weapon enhancement, and an additional five-year term for the prior serious felony conviction.  A consecutive one-year term for the robbery and four months for the weapon enhancement were also imposed.  (Id.)

Petitioner appealed the sentence, and on November 6, 2007, the Court of Appeal of the State of California, Fifth Appellate District (DCA) modified the judgment to stay the term imposed for the robbery, and affirmed the judgment as modified.  (LD 2.)

On December 13, 2007, Petitioner petitioned for review in the California Supreme Court which was summarily denied on January 16, 2008.  (LD 3-4.)

On March 15, 2007, Petitioner filed a petition for writ of habeas corpus in the trial court.  (LD 5.)  The court denied the petition on May 1, 2007, in an order noting a lack of documentation as well as the pendency of Petitioner's appeal in

---

[1] "LD" refers to lodged documents submitted by Respondent in support of the motion to dismiss.

the DCA.  The trial court stated that because of the appeal, the DCA had jurisdiction, and the trial court lacked jurisdiction. (LD 6, 1-2.)

On December 19, 2007, Petitioner filed another petition for writ of habeas corpus in the trial court.  (LD 7.)  On January 14, 2008, the court denied the petition.  The court determined that it lacked jurisdiction to grant the requested relief because the petition for review that had been filed by Petitioner in the Supreme Court in December 2007 was still pending, and no remittitur had issued.  (LD 8.)

On April 6, 2008, Petitioner filed a third petition for writ of habeas corpus in the Fresno County Superior Court, which was denied on April 25, 2008.  (LD 9, 10.)

On June 8, 2008, Petitioner filed a petition for writ of habeas corpus in the DCA, which was summarily denied on December 4, 2008.  (LD 11, 12.)

On March 29, 2009, Petitioner filed another petition for writ of habeas corpus in the DCA, which was summarily denied on April 17, 2009.  (LD 13, 14.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on May 8, 2009, which was summarily denied on September 30, 2009.  (LD 15, 16.)

The petition in the instant case was filed on July 26, 2010. (Pet. 1.)[2]

---

[2] Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court."  Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988).  The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).

III.   <u>Statute of Limitations</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA applies to all petitions for writ of habeas corpus filed after the enactment of the AEDPA.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), <u>cert</u>. <u>denied</u>, 118 S.Ct. 586 (1997).  Thus, the AEDPA applies to the instant petition, which was filed in July 2010.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate

---

Petitioner did not sign and date the petition he initially filed in this Court.  (Pet., doc. 1, 8.)  On July 28, 2010, he submitted a supplemental document stating that he was sending page 7 of the writ petition that was filed on July 26, 2010, because he forgot to date and sign the document. (Doc. 6, 1.)  He signed the petition as of July 28, 2010.  (<u>Id</u>. at 2.)  His request that the supplemental document be filed with his petition was granted. (Doc. 7, filed December 7, 2010.)  Neither the electronic nor the paper record contains the envelope within which the petition was mailed. Thus, application of the mailbox rule is not possible based on the documentation before the Court.

of the claim or claims presented could have been
discovered through the exercise of due diligence.

    (2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Generally the statute of limitations is an affirmative
defense, and the party claiming the defense bears the burden of
proof unless the limitations statute is considered to be
jurisdictional. Kingman Reef Atoll Investments, L.L.C. v. U.S.,
541 F.3d 1189, 1197 (9th Cir. 2008); Payan v. Aramark Management
Services Ltd. Partnership, 495 F.3d 1119, 1122 (9th Cir. 2007).
The one-year statute of limitations applicable to petitions for
federal habeas corpus relief by state prisoners is not
jurisdictional and does not set forth an inflexible rule
requiring dismissal whenever the one-year clock has run. Holland
v. Florida, --U.S.–, 130 S.Ct. 2549, 2560 (2010). Thus, under
the AEDPA, the respondent bears the burden of proving that the
AEDPA limitations period has expired. Ratliff v. Hedgepeth, 712
F.Supp.2d 1038, 1050 (C.D.Cal. 1020) (collecting authorities).

A.   Commencement of the Limitation Period

Respondent argues that the one-year limitation period of
§ 2244(d) began to run on the date specified in § 2244(d)(1)(A),
namely, the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review.

However, Petitioner contends that difficulties he
encountered in gaining access to the prison law library

7

constituted an impediment to filing an application that was
created by state action and prevented his filing a petition for
habeas relief.  Thus, Petitioner argues that pursuant to
§ 2244(d)(1)(B), the limitations period did not begin to run
until the date on which the impediment was removed.  (Opp., doc.
13, 6-7.)

### 1.   Removal of State-Created Impediment

If an applicant was prevented from filing a federal habeas
petition by an impediment created by state action in violation of
the Constitution or laws of the United States, then the
limitations period will commence running from the date on which
the impediment to filing is removed.  28 U.S.C. § 2244(d)(1)(B).
A circumstance or occurrence argued to have prevented an inmate
from filing a federal habeas petition pursuant to § 2244(d)(1)(B)
must violate the Constitution or laws of the United States.
§ 2244(d)(1)(B); Shannon v. Newland, 410 F.3d 1083, 1088 n.4 (9th
Cir. 2005).  Further, the petitioner must establish that the
alleged impediment actually caused the inmate to be unable to
file a timely petition.  Bryant v. Schriro, 499 F.3d 1056, 1060-
61 (9th Cir. 2007).

Here, Petitioner alleges that the conditions at the law
library at PVSP are not yet in compliance with the federal
consent decree in Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.
1970).  (Reply, doc. 13, 5.)

The Court takes judicial notice of the docket and document
number 321 filed on April 20, 2010, in Gilmore v. Lynch, case
number 3:66-cv-45878-SI, a case before the United States District
Court for the Northern District of California, in which the court

8

consolidated numerous suits of inmates and issued an injunction requiring California to maintain a specified list of legal literature in all its prisons to help inmates gain access to the courts.[3]  In 1972, the court approved regulations proposed by the state correctional department offering a more comprehensive list of materials, and it ordered their adoption.  Gilmore v. People, 220 F.3d 987, 992-95 (9th Cir. 987).  After the Gilmore case was dismissed by the district court with prejudice in 1980, the court retained jurisdiction over the 1972 injunction until it granted the defendants' motion to terminate the injunction and the court's jurisdiction on April 20, 2010.  (Doc. 321, 1-2.)  Thus, the Gilmore case is no longer pending.

It is now established that there is no abstract, freestanding constitutional right to have access to a law library or legal assistance, or even to file a timely § 2254 petition; rather, there is a right of meaningful access to the courts. Lewis v. Casey, 518 U.S. 343, 350-51 (1996); Ramirez v. Yates, 571 F.3d 993, 1000-1001 (9th Cir. 2009).  The decision in Gilmore to issue an injunction occurred well in advance of the 1996 decision in Lewis v. Casey, 518 U.S. 343, which established that the right of access to the courts may be satisfied not only by law libraries, but also by other methods of providing meaningful access, and that a deficient prison law library or legal assistance program is not in itself actionable.  Lewis v. Casey, 518 U.S. at 350-51.

---

[3] The Court may take judicial notice of court records.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

The Court concludes that the fact that a prison law library might not meet the standards of the injunction in the <u>Gilmore</u> case does not by itself establish an unconstitutional denial of access to the courts.

Petitioner alleges generally that prison authorities at PVSP have denied library privileges to prisoners with pending habeas deadlines, and the library contains inadequate materials and computer terminals to accommodate the overcrowded conditions of the prison.  All the law books have been removed from the library, and there are five (5) computers with different books in them that are updated every three (3) months.  Further, budget limitations have necessitated reducing staff and instituting rolling lock-downs that further limit or preclude library access for weeks at a time.  (Doc. 13, 5-6.)  The lock-downs shut an unspecified program down for one watch every other day, and the policy on the down days is to call in only inmates who are priority law library users (PLU) with a verified legal deadline within thirty days.  (<u>Id.</u> at 6.)  Petitioner alleges that his educational programming reduced his library time because he was not permitted to leave his work/education station to use the library.  (<u>Id.</u> at 5.)

Petitioner specifically alleges that the prison was locked down from August 15, 2010, to September 8, 2010, and that there were other, shorter lock-downs.  He alleges that the totality of the problems and policies concerning the law library have impeded him from being able to file his pleadings any sooner because he needed access to legal research materials and help to understand them.  (<u>Id.</u> at 6.)

The record contains the declaration of R. Kevorkian, who for sixteen years has been a librarian at PVSP.  (Doc. 20-1, 1.)  The librarian states that he or she not only manages the library's collections and acquisitions in accordance with state regulations and operational procedures, but also supervises work and monitors prisoners' access to the library.  The law library hours are typically 9:30 a.m. through 3:45 p.m., Monday through Friday. During institutional restrictions such as lock-downs, inmates may use the library by establishing urgency of need and obtaining preferred-legal-user (PLU) access or by being served at their cells with photocopied legal research materials, such as case law or statutes, prepared upon request.  A pre-existing scheduling conflict, such as a work assignment, may be overridden by establishing urgency of need and using the "ducat" or inmate pass system, whereby once the assignment office issues a ducat, an inmate may be called to the law library during his assigned work hours.  Inmates with court-ordered deadlines within thirty (30) days are given priority status pursuant to departmental and prison operations manuals.  (Id. at 1.)

In March and April 2011, Kevorkian also checked various logs, which are described as accurate, including records of inmates designated as having PLU status, dates and times of inmates' access to the library, and inmates' requests for copies. The PLU log reflected that Petitioner's name was not listed and that he did not apply for PLU status from December 2008 to the present.  The library in/out log reflected that between December 2008 and July 2010, Petitioner accessed the library five times: February 17, 2009, for about one-half hour; March 26, 2009, for

about an hour; March 9, 2010, for fifty minutes; July 13, 2010, for an hour; and July 21, 2010, for an hour and twenty minutes. (Id. at 1-2.)  The log of inmates' requests for copies from January 2009 through July 2010 reflected one instance in which Petitioner made 104 copies of a § 2254 petition on July 13, 2010. To the best of the librarian's knowledge, Petitioner was not denied access to the library from December 2008 to April 18, 2011, the date of the declaration.  (Id. at 2.)

In response, Petitioner declared that he sought priority library user status (PLU).  Whenever he requested PLU status, he was informed by Kevorkian that unless he had a court order or letter stating a deadline, no such status could be granted to Petitioner.  Further, the library was available to inmates in regular status less than half of the hours of 9:30 to 3:30 Monday through Friday; access depended upon housing assignment and frequent lock-downs.  He further alleged that Kevorkian was "deceptive."  (Doc. 26, 7.)

Petitioner submitted a declaration of inmate Charles Saenz that confirms the difficulty of obtaining access to the library except for one day a week because of lock-downs, the need for a thirty-day deadline, and yard time schedules.  (Id. at 8.) Saenz characterized library access as first come first served, and not guaranteed.  (Id.)  The declaration of inmate Douglas William Hysell, who is involved in numerous court cases, similarly confirms Petitioner's general assertions concerning access to the law library, available resources, and the PLU system.  (Id. at 9.)  Hysell further opines that a layman such as Petitioner, who lacked a thirty-day deadline, would be facing a state-created

12

impediment to researching and filing a cognizable petition. (<u>Id.</u>)
The declaration of inmate William Sutherland, who has four
ongoing cases and is required to do hours of research, confirms
the existence of PLU access but indicates that deadlines that are
set by rules (apparently as distinct from court order) are not a
basis to allow PLU status. (<u>Id.</u> at 10.)

Petitioner's factual allegations concerning library access
and lock-downs are general in nature; he does not detail specific
attempts to gain access to the law library or to use any
alternative means of research. The one period of lock-down
between August 15, 2010, and September 8, 2010, which Petitioner
specifically details, occurred after the petition was filed here.
In contrast, the declaration of the librarian demonstrates that
there were various methods to perform legal research despite
conflicting work assignments, educational programs, or lock-
downs. Further, during the critical period between December 4,
2008, when the DCA denied Petitioner's first petition filed in
that court for habeas relief, and the filing of the instant
petition on July 26, 2010, records reflect that Petitioner did
not seek preferred user status, sought to use the library only
five times for approximately five hours, and only used copy
services once to copy a § 2254 petition.

In summary, Petitioner has not shown that he suffered a
denial of his right of access to the courts or that it resulted
in any obstruction of his ability to file a habeas petition.

As set forth above, in the context of § 2244(d)(1)(B),
there is no abstract, freestanding constitutional right to have
access to a law library or legal assistance, or even to file a

1  timely § 2254 petition.  <u>Lewis v. Casey</u>, 518 U.S. 343, 350-51

2  (1996); <u>Ramirez v. Yates</u>, 571 F.3d 993, 1000-1001.  Instead, it

3  is the right of meaningful access to the courts that warrants

4  protection.  To show that a circumstance prevented a petitioner

5  from filing a habeas petition within the meaning of §

6  2244(d)(1)(B), the petitioner must show that the circumstance

7  prevented him from presenting his claims in any form to any

8  court.  <u>Id.</u>  Where a petitioner establishes only generalized,

9  limited access to legal materials and copying service, and the

10  petitioner is able to file multiple petitions in state courts

11  during the pertinent time period, the petitioner has failed to

12  establish an impediment by unlawful or unconstitutional state

13  action that actually prevented the filing of a timely petition.

14  <u>Id.</u>

15      Here, as the procedural summary of Petitioner's state court

16  proceedings reflects, Petitioner was able during the pertinent

17  time to file numerous state court petitions.  The filing of

18  multiple petitions demonstrates that Petitioner did not suffer a

19  deprivation of his constitutional right to meaningful access to

20  the courts and thus was not prevented from filing a federal

21  habeas petition.  <u>Ramirez v. Yates</u>, 571 F.3d at 1000-1001.

22      In summary, Petitioner has not alleged facts showing that

23  there was unconstitutional state action or that any state action

24  resulted in an impediment that actually prevented Petitioner from

25  filing a timely habeas petition.  Accordingly, the Court rejects

26  Petitioner's argument that § 2244(d)(1)(B) applies.

27      The Court concludes that the portion of § 2244(d)(1) that

28  governs the commencement of the running of the limitations period

14

is § 2244(d)(1)(A), which provides that the limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

## 2. Finality of the Judgment

Under § 2244(d)(1)(A), the "judgment" refers to the sentence imposed on the petitioner. Burton v. Stewart, 549 U.S. 147, 156-57 (2007). The last sentence was imposed on Petitioner on December 18, 2006.

Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001). The statute commences to run pursuant to § 2244(d)(1)(A) upon either 1) the conclusion of all direct criminal appeals in the state court system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or 2) if certiorari was not sought, by the conclusion of all direct criminal appeals in the state court system and the expiration of the time permitted for filing a petition for writ of certiorari. Wixom, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)). Neither party has indicated that Petitioner sought certiorari from the United States Supreme Court.

Here, Petitioner's direct criminal appeals in the state court system concluded when his petition for review was denied by the California Supreme Court on January 16, 2008. The time permitted for seeking certiorari was ninety days. Supreme Court

1  Rule 13; Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).

2       The Court will apply Fed. R. Civ. P. 6(a) in calculating the

3  pertinent time periods.  See, Waldrip v. Hall, 548 F.3d 729, 735

4  n.2 (9th Cir. 2008), cert. denied, 130 S.Ct. 2415 (2010).

5  Applying Fed. R. Civ. P. 6(a)(1)(A), the day of the triggering

6  event is excluded from the calculation.  Thus, the ninety-day

7  period commenced on January 17, 2008, the day following the

8  California Supreme Court's denial of review.  Applying Fed. R.

9  Civ. P. 6(a)(1)(B), which requires counting every day, the

10 ninetieth day was April 15, 2008.  Thus, the judgment became

11 final within the meaning of § 2244(d)(1)(A) on April 15, 2008.

12      Therefore, the limitation period began to run on April 16,

13 2008, and concluded one year later on April 15, 2009.  Fed. R.

14 Civ. P. 6(a); Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th

15 Cir. 2001) (holding analogously that the correct method for

16 computing the running of the one-year grace period after the

17 enactment of AEDPA is pursuant to Fed. R. Civ. P. 6(a), in which

18 the day upon which the triggering event occurs is not counted).

19      Because the petition in the instant case was not filed until

20 July 26, 2010, the petition appears on its face to have been

21 filed outside the one-year limitation period provided for by

22 § 2244(d)(1).

23           B.  Statutory Tolling

24      Title 28 U.S.C. § 2244(d)(2) states that the "time during

25 which a properly filed application for State post-conviction or

26 other collateral review with respect to the pertinent judgment or

27 claim is pending shall not be counted toward" the one-year

28 limitation period.  28 U.S.C. § 2244(d)(2).  Once a petitioner is

on notice that his habeas petition may be subject to dismissal based on the statute of limitations, he has the burden of demonstrating that the limitations period was sufficiently tolled by providing the pertinent facts, such as dates of filing and denial. Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009) (citing Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002), abrogation on other grounds recognized by Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007)).

An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'-i.e., 'until the completion of' that process." Carey v. Saffold, 536 U.S. 214, 219-20 (2002).  In California, this generally means that the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge, as long as the petitioner did not "unreasonably delay" in seeking review.  Id. at 221-23; accord, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  The statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case "pending" during that interval.  Id.

In Carey v. Saffold, 536 U.S. 214, the Court held that an application is "pending" until it "has achieved final resolution through the State's post-conviction procedures."  Id. at 220.  An application does not achieve the requisite finality until a state petitioner "completes a full round of collateral review."  Id. at 219-20.  Accordingly, in the absence of undue delay, an

application for post-conviction relief is pending during the "intervals between a lower court decision and a filing of a new petition in a higher court" and until the California Supreme Court denies review.  Id. at 223; Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003).

However, when one full round up the ladder of the state court system is complete and the claims in question are exhausted, a new application in a lower court begins a new round of collateral review.  Biggs v. Duncan, 339 F.3d at 1048.  The time between the completion of a first round of collateral review and the beginning of a second round is not tolled.  Delhomme v. Ramirez, 340 F.3d 817, 820 (9th Cir. 2003), abrogated on other grounds by Evans v. Chavis, 546 U.S. 189 (2006).

The first two habeas petitions filed by Petitioner in the trial court on March 15, 2007, and December 19, 2007, were filed before the California Supreme Court's denial on January 16, 2008, of Petitioner's petition for review of the DCA's decision modifying and otherwise affirming the judgment on direct appeal. Because the limitations period did not begin to run until even later, after expiration of the time to seek certiorari from the California Supreme Court's denial of review, Petitioner's first two habeas petitions were filed and denied before the limitations period commenced running.  A collateral action filed before the commencement of the running of the statutory limitation period has no tolling consequence.  Waldrip v. Hall, 548 F.3d 729, 735. Thus, the first two habeas petitions filed in the trial court could not, and did not, toll the running of the limitations period.

18

The next petition for collateral review was Petitioner's third petition for writ of habeas corpus filed in the trial court on April 6, 2008.  The interval between the California Supreme Court's denial of the petition for review on January 16, 2008, and the filing of the third habeas petition on April 6, 2008, is not tolled because there was no case "pending" during that interval.  Nino v. Galaza, 183 F.3d at 1006.

Although the date of filing the petition in the Superior Court on April 6, 2008, preceded the commencement of the running of the limitation period on April 16, 2008, the petition remained pending and was not denied until April 25, 2008.  Thus, the petition was pending between April 16, 2008, and April 25, 2008, during the running of the limitation period.  Therefore, this third petition in the trial court tolled the statute for ten (10) days.

Petitioner next filed a petition for writ of habeas corpus in the DCA on June 8, 2008.  The reasonably short time period between the trial court's denial of the habeas petition on April 25, 2008, and the filing of the DCA petition on June 8, 2008, is tolled because Petitioner was proceeding to complete one full round of collateral review without unreasonable delay.  Carey v. Saffold, 536 U.S. at 219-20.  Likewise, the period of the pendency of the DCA petition from June 8, 2008, until the DCA's denial on December 4, 2008, was tolled.  Thus, the limitation period was tolled from April 16, 2008, when the limitation period commenced to run during the pendency of the third trial court petition, until December 4, 2008, when the DCA denied the first petition, for a total of 233 days.

1    Respondent contends that there should be no "gap" or

2  "interval" tolling for the period between December 4, 2008, when

3  the DCA denied the first petition filed in the DCA, and March 29,

4  2009, when Petitioner filed another petition for habeas relief in

5  the DCA.  Respondent argues that the second DCA petition was

6  successive and thus did not constitute part of one continuous

7  round of collateral review.  Respondent also argues that

8  Petitioner unreasonably delayed in bringing the second DCA

9  petition.

10    Absent a clear direction or explanation from the California

11 Supreme Court about the meaning of the term "reasonable time" in

12 a specific factual context, or a clear indication that a filing

13 was timely or untimely, a federal court hearing a subsequent

14 federal habeas petition must examine all relevant circumstances

15 concerning the delay in each case and determine independently

16 whether the state courts would have considered any delay

17 reasonable so as to render the state petition "pending" within

18 the meaning of § 2244(d)(2).  Evans v. Chavis, 546 U.S. 189, 197-

19 98 (2006).

20    A delay of six months has been found to be unreasonable

21 because it is longer than the relatively short periods of thirty

22 (30) or sixty (60) days provided by most states for filing

23 appeals.  Evans v. Chavis, 546 U.S. at 201.  Shorter delays have

24 also been found to be unreasonable: one hundred forty-six (146)

25 days between the filing of two trial court petitions, Banjo v.

26 Ayers, 614 F.3d 964, 968-69 (9th Cir. 2010), cert. den., 131

27 S.Ct. 3023 (2011); intervals of eighty-one (81) and ninety-two

28 (92) days between the disposition of a writ at one level and the

filing of the next writ at a higher level, Velasquez v. Kirdland, 639 F.3d 964, 968 (9th Cir. 2011); one hundred fifteen (115) and one hundred one (101) days between denial of one petition and the filing of a subsequent petition, Chaffer v. Prosper, 592 F.3d. 1046, 1048 (9th Cir. 2010); and unexplained, unjustified periods of ninety-seven (97) and seventy-one (71) days, Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140 (C.D.Cal. 2006).

     Here, the DCA summarily denied both petitions; thus, the DCA did not expressly determine that any petition was untimely. Petitioner filed the second petition one hundred fifteen (115) days after denial of the previous petition.  The delay far exceeds the customarily short periods of delay considered reasonable.

     Petitioner seeks to distinguish cases that characterize as unreasonable delays in filing that are longer than thirty or sixty days after a disposition of a previous application. Petitioner argues that his own unreasonable delay occurred, if at all, only once, between December 4, 2008, and March 29, 2009. Petitioner contends that a single delay is not sufficient; rather, repetitive delays are required, and his overall progress through exhaustion of state court remedies was not characterized by unreasonable delay.

     However, reference to the pertinent statute shows that statutory tolling is permitted for the time "during which a properly filed application" for state post-conviction or other collateral review with respect to the pertinent judgment or claim "is pending...."  28 U.S.C. § 2244(d)(2).  The statutory scheme

21

is expressly focused on the pendency of each singular application.  Likewise, case authority reveals that the courts are concerned with the pendency and timeliness of each application for review.  See, e.g., Carey v. Saffold, 536 U.S. at 216-23; Evans v. Chavis, 546 U.S. at 191-201.

Petitioner argues that he was not filing successive petitions, but rather was simply exhausting a claim concerning the allegedly ineffective assistance of counsel.  (Doc. 13, 1:20-24.)  Petitioner declares that he mistakenly thought that he needed something more than a "postage stamp denial of his petition before proceeding to the next level," and he thus re-filed a second time in the DCA.  (Id. at 3:3-5.)  He admits that the duplicate petitions in the DCA "might have been unnecessary," but he disagrees that the petitions were successive because they concerned the same grounds and were not a return to the lower courts for another round of habeas.  (Id. at 3.)  He also contends that the second DCA petition was an amendment to his first petition to add a claim based on a recent decision of the United States Supreme Court, In re Cunningham, of which he had become aware.  (Doc. 26, 2:6-14.)

To benefit from statutory tolling, a petitioner must adequately justify a substantial delay.  28 U.S.C. § 2244(d)(2); Evans v. Chavis, 546 U.S. at 192-93; Waldrip v. Hall, 548 F.3d 729, 734.  Under California law, a habeas "claim or sub-claim that is substantially delayed will nevertheless be considered on the merits if the petitioner can demonstrate 'good cause' for the delay."  In re Robbins, 18 Cal.4th 770, 805 (1998) (citing In re Clark, 5 Cal.4th 750, 783 (1993)).  Petitioner must show

particular circumstances, based on allegations of specific facts, sufficient to justify the delay; allegations made in general terms are insufficient.  In re Robbins, 18 Cal.4th at 787-88, 805 (citing In re Walker, 10 Cal.3d 764, 774 (1974)).  The delay is measured from the time the petitioner or counsel knew, or reasonably should have known, of the factual information offered in support of the claim and the legal basis for the claim.  In re Robbins, 18 Cal.4th at 787.

Here, Petitioner argues that viewing the totality of his pursuit of one full, single round of state habeas review, results in the conclusion that Petitioner was generally diligent. Further, Petitioner was a lay person and was "somewhat confused" about the proper way to proceed.  When on December 4, 2008, he received the denial of his first DCA petition, he filed another petition based on a mistaken, perceived need to obtain more than a summary denial of his petition.  (Opp., doc. 13, 3:2, 2-3.)

With respect to Petitioner's reliance on his pro se status, one generally does not have a constitutional right to counsel in non-capital, state post-conviction proceedings or in the course of discretionary direct review.  Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987); Ross v. Moffitt, 417 U.S. 600, 610-11 (1974). Therefore, there is no constitutional right to counsel in non-capital, federal habeas proceedings.  Bonin v. Vasquez, 999 F.2d 425, 429 (9th Cir. 1993).  Pro se status is not in itself justification for late filing.  In re Clark, 5 Cal.4th 750, 765 (1993).

Petitioner's allegations concerning access to library facilities, lack of legal and procedural knowledge, and limited

access to the prison law library are not sufficient to justify a substantial delay where the petitioner was not wholly prevented by lock-downs or prison employment from using the law library. Evans v. Chavis, 546 U.S. at 201.

Petitioner's allegations concerning lock-downs, overcrowding, and conflicts with Petitioner's educational programming in prison are general in nature and do not demonstrate that for the entire, extended period of delay between December 4, 2008, and March 29, 2009, Petitioner was prevented from filing a petition. The specific information given by Petitioner concerning lock-downs relates to the period from August 15, 2010, through September 8, 2010; otherwise, he refers only to other, shorter lock-downs. The more specific allegations of the law librarian establish that there were methods of access (PLU access or use of the ducat system) which Petitioner did not use, and that Petitioner did have access to the library and to a copy service. In short, Petitioner has not alleged specific facts showing good cause for his long delay in filing the second DCA petition.

With respect to the argument that the second petition was not really successive, the Court takes judicial notice of the docket of the DCA in the first habeas proceeding filed there, case number F055452.[4]  The docket reflects that no order to show

---

[4] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official web sites. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010). It is appropriate to take judicial notice of the docket sheet of a California court. White v Martel, 601 F.3d 882, 885 (9th Cir. 2010), cert. denied, 131 S.Ct. 332 (2010). The official website of the

1  cause issued in that proceeding.  Pursuant to Cal. Rules of
2  Court, Rule 8.387, the denial order filed on December 4, 2008,
3  was thus final on the day it was issued.[5]  Therefore, the DCA's
4  first denial was final prior to the filing of the second petition
5  almost four months later.

6      With respect whether or not the second petition was
7  successive, Ninth Circuit authority establishes that if a
8  petitioner is attempting to correct deficiencies of a prior
9  petition, the prisoner is appropriately using state court
10  procedures, and habeas review is still pending.  To determine
11  whether tolling is appropriate, a court considers whether the
12  subsequent petition is limited to an elaboration of the facts
13  relating to the claims in the first petition.  If not, the
14  subsequent petition begins a new round of review, and the gap is
15  not tolled.  Banjo v. Ayers, 614 F.3d at 968-69; Hemmerle v.
16  Schriro, 495 F.3d 1069, 1075 (9th Cir. 2007).  However, if the
17  subsequent petition simply attempts to correct the deficiencies
18  in the prior petition, it is construed as part of the previous
19  full round of collateral review.  Banjo v. Ayers, 614 F.3d at
20  969.  If such a subsequent petition is denied on the merits, it
21  will toll the statute during the interval that preceded its
22  filing.  Id.  If such a subsequent petition was not timely filed
23  pursuant to state law, then the period between the petitions is

24

25  California state courts is http://www.courts.ca.gov/courts.htm.
       [5] Rule 8.387 was formerly Rule 8.386, which was adopted effective January
26  1, 2008, and was renumbered as Rule 8.387 and amended, in respects not
    pertinent to the present case, effective January 1, 2009.  Pursuant to Cal.
27  Rules of Court, Rule 8.387(b)(1), a decision of the Court of Appeal in a
    habeas corpus proceeding is generally final in that court thirty (30) days
    after filing.  However, the denial of a petition for writ of habeas corpus
28  without issuance of an order to show cause is final in the Court of Appeal
    upon filing.  Rule 8.387(b)(2)(A).

1  not tolled.   Id.

2      Here, in the first DCA petition, Petitioner raised the

3  following claims:  1) the trial court imposed an unauthorized

4  sentence; 2) the imposition of an unauthorized sentence was in

5  breach of the plea agreement and provided grounds for Petitioner

6  to withdraw his plea; 3) the trial court wrongly denied

7  Petitioner's motion to substitute appointed counsel; and 4)

8  Petitioner's counsel in the trial court rendered ineffective

9  assistance by failing to communicate with Petitioner,

10 representing that Petitioner's case was a loser, and failing to

11 object to or challenge the unauthorized sentence and to correct

12 an error of 1,144 days of time credit at sentencing.  (LD 11.)

13     In the second petition filed in the DCA, Petitioner argued

14 that his plea agreement had been breached because his sentence

15 was unconstitutional as it was based on findings made by a

16 preponderance of evidence by the sentencing court instead of

17 beyond a reasonable doubt by a jury pursuant to Apprendi v. New

18 Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296

19 (2004); United States v. Booker, 543 U.S. 220; Ring v. Arizona,

20 536 U.S. 584 (2002), and Cunningham v. California, 549 U.S. 270

21 (2007).  (LD 13, 3-4.)  He alleged that his counsel had

22 maliciously conspired with the prosecutor to coerce and pressure

23 Petitioner to enter a plea by fear.

24     It thus appears that, as Petitioner has admitted, rather

25 than simply add facts to the petition to perfect an earlier

26 claim, Petitioner in fact raised a new, constitutional claim in

27 the second petition.  Further, he alleged different facts with

28 respect to the claim of alleged ineffective assistance of trial

counsel, which changed the basis of the claim from omissions to affirmative, malicious conduct.  Accordingly, the second petition does not appear to come within the exception, and it thus was a successive petition.  Moreover, the cases relied on by Petitioner in raising the new claim were not so recent as to justify the delay in filing.

However, regardless of whether or not the second petition was successive and subject to denial, the delay in filing the second petition was unreasonable and unjustified.  Because Petitioner did not justify the delay during the period following the DCA's denial of his petition on December 4, 2008, until March 29, 2009, when he filed his second DCA petition, the interval is not tolled.

In summary, the statute of limitations began running on April 16, 2008, and was tolled until December 4, 2008.  One hundred fourteen (114) days passed from December 5, 2008, through March 28, 2009.  At that point, two hundred and fifty-one (251) days of the limitations period remained.  The statute was tolled from March 29, 2009, through September 30, 2009, when the California Supreme Court denied the petition for writ of habeas corpus.  The statute thus began to run again on October 1, 2009. The statutory period expired two hundred and fifty-one days later on June 8, 2010.  As Petitioner did not file the petition until July 26, 2010, the petition was time-barred.

C.   Equitable Tolling

Petitioner argues that the running of the statute was equitably tolled due to limited access to the law library based on overcrowding, lock-downs, and conflicts with Petitioner's work

and education programs.  (Opp., doc. 13, 5.)  Petitioner also
alleges that as a high school drop-out, he was untrained in basic
education when he arrived at PVSP; he only recently passed the
state's GED program.  This hindered his skills in learning the
law and also reduced his access to the law library because he
could not leave his work station during the times he could
otherwise utilize the library.  (Id. at 5:22-28.)  He was never
granted access to the law library during numerous lock-downs at
PVSP.  (Doc. 26, 4:8-10.)  Petitioner declares that the law
librarian "failed to mention that at that very time he stated
Petitioner could access the law library, the facility was locked
down...."  (Id. at 4:26-28.)

Petitioner also states that the facts alleged by Respondent
and Respondent's witnesses are outside the record on appeal and
constitute grounds to grant an evidentiary hearing, appoint
counsel, and permit investigation and refutation of the
librarian's declaration.  (Id. at 5.)

The one-year limitation period of § 2244 is subject to
equitable tolling where the petitioner has been diligent, and
extraordinary circumstances, such as the egregious misconduct of
counsel, have prevented the petitioner from filing a timely
petition.  Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560
(2010).  The petitioner must show that the extraordinary
circumstances were the cause of his untimeliness and that the
extraordinary circumstances made it impossible to file a petition
on time.  Ramirez v. Yates, 571 F.3d 993, 997.  The diligence
required for equitable tolling is reasonable diligence, not
"maximum feasible diligence."  Holland v. Florida, 130 S.Ct. at

28

1   2565.

2   "[T]he threshold necessary to trigger equitable tolling
3   [under AEDPA] is very high, lest the exceptions swallow the
4   rule." Spitsyn v. Moore, 345 F.3d 796, 799 (quoting Miranda v.
5   Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).

6   Petitioner bears the burden of alleging facts that would
7   give rise to tolling. Smith v. Duncan, 297 F.3d 809 (9th Cir.
8   2002).

9   Here, Petitioner proceeded pro se. Petitioner's pro se
10  status is not an extraordinary circumstance. Chaffer v. Prosper,
11  592 F.3d 1046, 1049. A pro se petitioner's confusion or
12  ignorance of the law does not, in itself, warrant equitable
13  tolling. Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir.
14  2006).

15  Limited access to a law library and copy machine is a
16  routine restriction of prison life and thus is not an
17  extraordinary circumstance. Ramirez v. Yates, 571 F.3d at 993.
18  Petitioner's allegations are general, and Petitioner has not
19  shown how any limitation of access to the law library actually
20  made it impossible for him to file a petition raising essentially
21  the same claims that he had raised before. Thus, Petitioner's
22  showing differs materially from one that establishes that lack of
23  access to specific materials precluded timely filing. Further,
24  Petitioner's filing numerous petitions in the state courts during
25  his incarceration is inconsistent with his allegations of
26  impossibility. Cf., Ramirez v. Yates, 571 F.3d at 998.

27  Accordingly, the Court concludes that Petitioner has not
28  shown that the statute should be equitably tolled.

1    IV.   <u>Petitioner's Request for an Evidentiary Hearing</u>

2        Petitioner requests an evidentiary hearing to investigate

3    and refute the allegations of the law librarian concerning

4    equitable tolling.

5        In considering a request for an evidentiary hearing, the

6    Court must first determine whether a factual basis exists in the

7    record to support the petitioner's claim.   <u>Baja v. Ducharme</u>, 187

8    F.3d 1075, 1078 (9th Cir. 1999).   The petitioner should state

9    with particularity facts, which if proven, would entitle him to

10   relief.   <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1167 (9th Cir. 2005);

11   <u>Baja v. Ducharme</u>, 187 F.3d at 1079.

12       As the foregoing analysis reflects, Petitioner did not

13   allege or document specific facts that, if proven, would entitle

14   him to relief on the basis of equitable tolling.   Petitioner has

15   not demonstrated or suggested extraordinary circumstances beyond

16   his control.   He alleged only generalities that are contradicted

17   by specific facts reflected in a declaration based on

18   institutional records.

19       Petitioner was granted leave to file a sur-reply, and the

20   parties were given an ample opportunity to develop the pertinent

21   facts.   The matters as to which Petitioner should have submitted

22   specific facts pertained to events within his own knowledge, such

23   as his specific attempts to gain access to the law library and to

24   use other research sources, and the precise reasons why allegedly

25   limited access to research materials precluded timely filing.

26   Although Petitioner filed numerous petitions in the state courts

27   during the pertinent time and has had an opportunity to develop

28   the facts, he has not set forth specific facts that would

30

equitably toll the statute.  Accordingly, the Court will deny

Petitioner's request for an evidentiary hearing.

V.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken to the Court of Appeals

from the final order in a habeas proceeding in which the

detention complained of arises out of process issued by a state

court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

U.S. 322, 336 (2003).  A certificate of appealability may issue

only if the applicant makes a substantial showing of the denial

of a constitutional right.  § 2253(c)(2).  Under this standard, a

petitioner must show that reasonable jurists could debate whether

the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement

to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336

(quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

certificate should issue if the Petitioner shows that jurists of

reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district

court was correct in any procedural ruling.  Slack v. McDaniel,

529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of

the claims in the habeas petition, generally assesses their

merits, and determines whether the resolution was debatable among

jurists of reason or wrong.  Id.  It is necessary for an

applicant to show more than an absence of frivolity or the

existence of mere good faith; however, it is not necessary for an

1  applicant to show that the appeal will succeed.  <u>Miller-El v.</u>

2  <u>Cockrell</u>, 537 U.S. at 338.

3       A district court must issue or deny a certificate of

4  appealability when it enters a final order adverse to the

5  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

6       Here, it does not appear that reasonable jurists could

7  debate whether the petition should have been resolved in a

8  different manner.  Petitioner has not made a substantial showing

9  of the denial of a constitutional right.

10      Accordingly, the Court will decline to issue a certificate

11  of appealability.

12      VI.  <u>Disposition</u>

13      In summary, Respondent has established that the petition was

14  untimely and should be dismissed.

15      Accordingly, it is ORDERED that:

16      1)  Respondent's motion to dismiss the petition is GRANTED;

17  and

18      2)  Petitioner's motion for an evidentiary hearing

19  concerning the facts pertinent to equitable tolling is DENIED;

20  and

21      3)  The petition is DISMISSED as untimely filed; and

22      4)  The Clerk shall ENTER judgment for Respondent; and

23      5)  The Court DECLINES to issue a certificate of

24  appealability.

25  IT IS SO ORDERED.

26  **Dated:    September 6, 2011**            **/s/ Sheila K. Oberto**
                                   UNITED STATES MAGISTRATE JUDGE

27

28